EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
THE LAW OFFICE OF DEBORAH M. GOLDEN
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| D.S., | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| | ) **DEMAND** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA; RAY | ) |
| GARCIA, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

**INTRODUCTION**

1. Plaintiff D.S. served a sentence in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club."

2. While housed at FCI Dublin, Plaintiff D.S. faced constant sexual harassment, culminating in multiple instances of sexual abuse.

///

3.     Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

4.     As a result, Plaintiff D.S. suffers from long-lasting trauma.

## JURISDICTION AND VENUE

5.     An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

6.     This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8.     Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff D.S. will list this case on the bi-monthly list that will be submitted to the Court to relate this case to those other cases.

## PARTIES

9.     Plaintiff D.S. was at all times relevant here incarcerated in FCI Dublin.

10.     Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institution Dublin ("FCI Dublin"). FCI Dublin was a federal female low-security correctional institution.

11.     Defendant Ray Garcia was, at all times relevant hereto, the Warden and PREA Coordinator during the time of this abuse. He is sued in his individual capacity.

12.     While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff D.S. Plaintiff D.S. was dependent upon Defendant United States for her personal security and necessities.

13. In performing the acts and/or omissions contained herein, Ramos, Saucedo, Highhouse, and Defendant Garcia acted under color of federal law, and Plaintiff D.S. is informed and believes each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff D.S. Defendants Garcia and United States knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff D.G. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendants Garcia and United States failed to take steps to protect Plaintiff D.S. and to ensure her rights to safety from sexual abuse.

## FACTS

14. Plaintiff D.S. was incarcerated at FCI Dublin from 2017 until her release from BOP custody in July of 2022.

15. For the duration of her time at FCI Dublin, Plaintiff D.S. suffered under a campaign of sexual harassment, threats of sexual assault, and sexual abuse.

16. She became intimately familiar with why FCI Dublin was called "the Rape Club".

17. These threats and harassment came from multiple correctional officers at Dublin, many of whom were widely known to sexually assault other prisoners.

18. Beginning in 2018, Officer Nicholas Theodore Ramos became overly friendly and overtly flirtatious with Plaintiff D.S.

19. During these interactions, he would share personal information with her.

20. He told her that he had ties to street gangs in Northern California, which caused Plaintiff D.S. extreme anxiety and fear because she had dealt with cartels before.

21. As her conviction offense involved some of this history, she believed that Ramos knew this and shared his ties to gangs in an effort to intimidate Plaintiff D.S.

22. Indeed, Plaintiff D.S. feared for her safety that if she ever reported Ramos for his misconduct, that he would send people from the gang to harm her or her family.

23. After his efforts to groom and terrify her, Officer Ramos began to sexually abuse Plaintiff D.S.

24. Still in 2018, Officer Ramos began entering Plaintiff D.S.'s cell while she was by herself.

25. He did this approximately five times.

26. While in her cell, he forced her to perform oral sex on him.

27. On two occasions, he ejaculated into her mouth.

28. Plaintiff D.S. told him that she was scared to continue these encounters.

29. After she tried to end these encounters, Officer Ramos then entered her cell on two subsequent occasions.

30. On each occasion, he forced her onto her stomach on her bed, pulled her undergarments off, and forcibly anally raped her.

31. She fought him off both times.

32. On the first occasion, he was able to penetrate her anus, but he did not insert his penis entirely.

33. On the second occasion, he was able to insert his penis further into her anus.

34. Plaintiff D.S. was also harassed by Officer Ramos' friend at the prison, Officer Sergio Saucedo.

35. Officer Saucedo was especially domineering towards Plaintiff D.S.

36. He would regularly yell and use aggression as a means to cause fear.

37. He would also stand very close to Plaintiff D.S., causing her to fear that he was going to sexually abuse her.

38. To escape this abuse, Plaintiff D.S. began frequenting the chapel because it provided peace.

39. There, Chaplain John Highhouse befriended her.

40. He would regularly ask Plaintiff D.S. and another prisoner to come into his office with him, where he would close the door.

41. With the door closed, he would behave more casually and flirtatiously with Plaintiff D.S.

42. He often wore tight shirts and had an erection while he set at his desk, which he would display through his pants by splaying his legs in his seat.

43. His conduct made Plaintiff D.S. feel uncomfortable and intimidated.

44. When the other prisoner was released for prison, Chaplain Highhouse was persistent in asking Plaintiff D.S. for this other prisoner's phone number so that he could call her.

45. She was aware that he was having inappropriate relationships with other prisoners and worried that she would be his next victim.

46. However, she also worried that if she did not comply with him, she could be punished or excluded from the chapel.

47. Plaintiff D.S. tried to talk with Defendant Garcia, but he would not help her and it was clear to her that he would offer no protection.

48. The culture within FCI Dublin was one where officers had total power to use and abuse the prisoners.

49. Plaintiff D.S. was very aware of this dynamic and felt incredibly powerless.

50. As a survivor of sexual violence and rape in the past, Plaintiff D.S. was especially tormented by the sexual abuse, harassment, and threats of sexual assault that she experienced.

51. Plaintiff D.S. has been on supervised release since July 2022 and will be on supervised release through July 2027.

52. Since her release, she has been seeing a psychiatrist and a therapist.

53. She has anxiety and depression, and she has been diagnosed with PTSD.

54. She has flashbacks from Officer Ramos' abuse.

## EXHAUSTION

55. On October 30, 2024, Plaintiff D.S., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

56. The BOP acknowledged receipt on November 19, 2024.

57. On September 10, 2025, Plaintiff D.S., through counsel, mailed an amended administrative claim under the FTCA to the BOP's Western Regional Office.

58. The BOP denied her claim on March 3, 2026.

**EQUITABLE TOLLING**

59.   Plaintiff D.S. is entitled to equitable tolling for her FTCA Claim.

60.   The FTCA's statute of limitations is subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015).

61.   Equitable tolling applies when 1) a plaintiff pursued their rights diligently, and 2) extraordinary circumstances prevented timely filing. *Wong v. Beebe*, 732 F. 2d 1030, 1052 (9th Cir. 2013).

62.   Courts have long recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, retaliation, and coercion prevented timely filing. *See D.S., Su v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24; *Stoll v. Runyon*, 165 F. 3d 1238, 1242 (9th Cir. 1999) (equitable tolling is appropriate where sexual abuse and post-traumatic stress disorder rendered the plaintiff unable to timely pursue a claim).

63.   Plaintiff D.S. clearly faced extraordinary circumstances, preventing the timely filing of her FTCA claim.

64.   Because Plaintiff D.S. remained incarcerated within the BOP until July 2022 and is on supervised release through July 2027, she continued to experience extraordinary circumstances preventing her from freely accessing the courts or safely pursuing her claims. As long as she remained under BOP custody and control, the threats, coercion, and fear of retaliation continued to silence her.

65.   A court-appointed Special Master confirmed that during the time of Plaintiff D.S.'s incarceration, FCI Dublin lacked a safe and consistent path for women to file sex abuse complaints, that women in custody were intimidated and forced to justify why they needed to complete sex abuse complaints in the first place, and that women who tried to report abuse were met with retaliation, including solitary confinement and wrongful disciplinary infractions, which extended their incarceration.[1]

---

[1] First Report of the Special Master Pursuant to the Court's Order of March 26, 2024, U.S Bureau of Prisons Federal Correctional Institution, Dublin, Submitted by Wendy Still, Special Master U.S. District Court Northern District Court of California June 5, 2024.

66. Further, Plaintiff D.S. has a rational fear that she or her family may be retaliated against by members of street gangs at the behest of Defendants.

67. Plaintiff D.S. has diligently pursued her rights by initiating this claim as soon as she felt some level of safety.

68. Plaintiff D.S. has further demonstrated that she faced extraordinary circumstances preventing her from filing within the ordinary FTCA statutory period.

69. Defendants are not entitled to benefit from their own misconduct. Equitable tolling of Plaintiff D.S.'s statute of limitations prevents this very result. Without the equitable tolling of Plaintiff's statute of limitations, Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting her claim within the statutory period.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.4)

70. Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

71. Plaintiff D.S. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees Ramos, Highhouse, Saucedo, and Defendant Garcia.

72. The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

73. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

74. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

75. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

76. Ramos, Highhouse, Saucedo and Defendant Garcia discriminated against Plaintiff D.S. based on her gender when they repeatedly sexually abused her by physically subjecting her to sexual acts.

77. By these acts, Ramos, Highhouse, Saucedo, and Defendant Garcia caused Plaintiff D.S. physical, mental, and emotional injuries as well as injury to her personal dignity.

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant Garcia)**
**(FTCA; Cal. Civ. Code § 52.4)**

78. Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

79. Plaintiff D.S. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against Defendant Garcia.

80. Defendant Garcia, a federal employee, engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

81. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

82. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

83. Plaintiff D.S. has a nonfrivolous argument that Defendant Garcia bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

84. Defendant Garcia discriminated against Plaintiff D.S. based on her gender when he failed to protect her from repeated sexual abuse.

85. By these acts, Defendant Garcia caused Plaintiff D.S. physical, mental, and emotional injuries as well as injury to her personal dignity.

**THIRD CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant United States)**
**(FTCA; California Common Law)**

86. Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

87. Plaintiff D.S. brings this claim for sexual assault under the Federal Tort Claims Act for violation of California common law against the United States based on the conduct of its employees Ramos, Highhouse, Saucedo, and Defendant Garcia.

88. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

89. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

90. Ramos, Highhouse, Saucedo, and Defendant Garcia violated Plaintiff D.S.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated, and/or retaliating against her, and/or failing to protect her from harm.

91. Ramos', Highhouse's, Saucedo's, and Defendant Garcia's sexual abuse of Plaintiff D.S. and/or failure to protect Plaintiff D.S. from sexual abuse was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

92. Ramos, Highhouse, Saucedo, and Defendant Garcia subjected Plaintiff D.S. to these sexual acts and/or furthered the ability of officers to engage in these sexual acts, and/or failed to intervene in these sexual acts with the intent to cause or permit a harmful or offensive contact with Plaintiff D.S.'s person.

93. Defendant Garcia knew or should have known that Plaintiff D.S. was being sexually abused and failed to protect her despite his duty to do so.

94. By intentionally subjecting Plaintiff D.S. to sexual acts, Ramos, Highhouse, Saucedo, and Defendant Garcia acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

95. By repeatedly subjecting Plaintiff D.S. to these sexual acts and/or furthering the ability of officers to engage in these sexual acts, and/or failing to intervene in these sexual acts,

Ramos, Highhouse, Saucedo, and Defendant Garcia caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

### FOURTH CLAIM FOR RELIEF
### SEXUAL BATTERY
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 1708.5)

96.     Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

97.     Plaintiff D.S. brings this claim for sexual battery under the Federal Tort Claims Act based on California Civil Code § 1708.5 against the United States for the conduct of its employees Ramos, Highhouse, Saucedo, and Defendant Garcia.

98.     These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

99.     Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

100.     Ramos committed sexual battery against Plaintiff D.S. by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

101.     Defendant Garcia knew or should have known that Plaintiff D.S. was being sexually abused and failed to protect her despite his duty to do so.

102.     The sexual abuse of Plaintiff D.S., a prisoner, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

103.     Ramos and Defendant Garcia subjected Plaintiff D.S. to these sexual acts and/or furthered the ability of officers to engage in these sexual acts, and/or failed to intervene in these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff D.S.'s person.

### FIFTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendant United States)
### (FTCA; California Common Law)

104.     Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

105. Plaintiff D.S. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of Ramos, Highhouse, Saucedo, and Defendant Garcia.

106. These federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

107. Their positions as correctional officers were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

108. Ramos, Highhouse, Saucedo, and Defendant Garcia engaged in outrageous conduct by repeatedly subjecting Plaintiff D.S. to sexual acts and/or furthering the ability of officers to engage in these sexual acts, and/or failing to intervene in these sexual acts while she was incarcerated as a prisoner in their employers' custody.

109. They abused their authority over Plaintiff D.S. and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

110. Defendant Garcia knew or should have known that Plaintiff D.S. was being sexually abused and failed to protect her despite his duty to do so.

111. Ramos, Highhouse, Saucedo, and Defendant Garcia's sexual acts and/or furtherance of the officers' ability to engage in these sexual acts, and/or failure to intervene in these sexual acts, caused Plaintiff D.S. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety.

112. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

113. Ramos, Highhouse, Saucedo, and Defendant Garcia intended to cause Plaintiff D.S. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of an inmate.

///

///

///

## SIXTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendant Garcia)
### (California Common Law)

114. Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

115. Plaintiff D.S. brings this claim for the intentional infliction of emotional distress against Defendant Garcia.

116. Ramos, Highhouse, and Saucedo engaged in outrageous conduct by repeatedly subjecting Plaintiff D.S. to sexual abuse and harassment while she was incarcerated as a prisoner in their employers' custody.

117. They abused their authority over Plaintiff D.S. and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

118. Defendant Garcia knew or should have known that Plaintiff D.S. was being sexually abused and failed to protect her despite his duty to do so.

119. Plaintiff D.S. has a nonfrivolous argument that Defendant Garcia bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

120. Defendants Garcia's failure to protect her from sexual abuse caused Plaintiff D.S. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety.

121. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

122. Defendant Garcia intended to cause Plaintiff D.S. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of a prisoner.

## SEVENTH CLAIM FOR RELIEF
### BANE ACT
### (against all Defendants)
### (FTCA; Cal. Civ. Code § 52.1)

123. Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

124. Plaintiff D.S. was in the custody and control of the United States during all relevant times.

125. Ramos, Highhouse, Saucedo and Defendant Garcia violated Plaintiff D.S.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

126. Plaintiff D.S. has a nonfrivolous argument that Defendant Garcia bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

127. Defendant United States, by the actions of its employees Ramos, Highhouse, Saucedo and Defendant Garcia interfered with Plaintiff D.S.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

128. As a proximate result of these acts, Plaintiff D.S. sustained damage and injury.

**EIGHTH CLAIM FOR RELIEF**
**TRAFFICKING VICTIMS PROTECTION ACT**
**(against all Defendants)**
**(18 U.S.C. § 1581, *et seq.*)**

129. Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

130. Ramos, Highhouse, and Saucedo knowingly recruited, enticed, and solicited Plaintiff D.S. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

131. Ramos made Plaintiff D.S. engage in sex acts through force and coercion.

132. Highhouse attempted to get Plaintiff D.S. to engage in sex acts through force and coercion.

133. Defendants United States and Garcia knew of, or should have reasonably known, that Ramos and Highhouse were soliciting Plaintiff D.S. in exchange for sex acts, and benefited by failing to protect Plaintiff D.S.

134. Plaintiff D.S. has a nonfrivolous argument that Defendant Garcia bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

135. This conduct has caused Plaintiff D.S. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

**ELEVENTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against the United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

136. Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

137. Ramos, Highhouse, and Saucedo knowingly recruited, enticed, and solicited Plaintiff D.S. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

138. Ramos made Plaintiff D.S. engage in sex acts through force and coercion.

139. Highhouse attempted to get Plaintiff D.S. to engage in sex acts through force and coercion.

140. Defendant Garcia knew or should have known that Ramos, Highhouse, and Saucedo were engaged in these activities and intentionally placed Plaintiff D.S. at greater risk of harm and/or failed to act in a manner that protected Plaintiff D.S. from harm.

141. Defendant United States employed Ramos, Highhouse, Saucedo, and Defendant Garcia, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

*D.S. v. United States of America*, No.
Complaint for Damages and Jury Demand - 14

142.    This conduct has caused Plaintiff D.S. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## TWELFTH CLAIM FOR RELIEF
### CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT
### (against Defendant Garcia)
### (Cal. Civ. Code § 52.5)

143.    Plaintiff D.S. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

144.    Ramos, Highhouse, and Saucedo knowingly recruited, enticed, and solicited Plaintiff D.S. by offering benefits and things of value, such as not being placed in the SHU, for engaging in sex acts.

145.    Ramos made Plaintiff D.S. engage in sex acts through force and coercion.

146.    Highhouse attempted to get Plaintiff D.S. to engage in sex acts through force and coercion.

147.    Defendant Garcia knew or should have known that Ramos, Highhouse, and Saucedo were engaged in these activities and intentionally placed Plaintiff D.S. in greater risk of harm and/or failed to act in a manner that protected Plaintiff D.S. from harm.

148.    This conduct has caused Plaintiff D.S. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## PRAYER FOR RELIEF

149.    Plaintiff D.S. prays for judgment against Defendants, and each of them, as follows:

(a)    An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff D.S. in an amount to be determined at trial;

(b)    An award to Plaintiff D.S. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c)    For such other and further relief as this Court may deem just and proper.

///
///
///

*D.S. v. United States of America*, No.
Complaint for Damages and Jury Demand - 15

**JURY TRIAL DEMAND**

Plaintiff D.S. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: March 5, 2026

SIEGEL, YEE, BRUNNER & MEHTA

By:_____
EmilyRose Johns


THE LAW OFFICE OF DEBORAH M. GOLDEN


By: /s/ *Deborah M. Golden*
Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming


*Attorneys for Plaintiff*